## SHAFFER *v.* THE STATE.—1 Howard, 238.

### MURDER.

By the statute, the panel of jurors is to be drawn in term time, or in vacation, and a *venire* is directed to be issued, returnable to the next term. The grand jury is to be drawn from the number appearing; the balance are to be sworn as petit jurors for the term. These jurors were not intended exclusively to form the panel for the trial of criminal cases.

The circuit courts derive their criminal jurisdiction and the powers necessary to enforce it from the sixteenth section of the Circuit Court Law, which declares that they shall "have and exercise all the powers incident or belonging to a court of oyer and terminer, and general jail delivery." This statute vests in the circuit courts, without further legislation, the subject matter pertaining to courts of oyer and terminer, and of general jail delivery, and also confers on them all the incidents and necessary means of enforcing their jurisdiction.

The *venire* may be for a greater number of jurors than twelve, and may be made returnable the same day it is issued, or any day during the term.

Alleging the grand jurors to be the grand jurors of the State of Mississippi, is a sufficient averment, and it is not necessary to allege in the caption of the indictment that they were "then and there" sworn.

A return of "served a true copy of the indictment, *venire facias* and the *venire* on the prisoner," is a sufficient service of the panel.

A command to the sheriff, embraced in the special *venire,* to summon the jury "residing as near as may be to the place where the murder was committed," is erroneous, and ground for a reversal of the judgment.

Error to Wilkinson circuit court.   SMITH, J.

The plaintiff in error was indicted in the court below for the murder of Benjamin Turbeville, and on trial thereof, was convicted, and he brings the case to this court. He made a motion in arrest of judgment, which was overruled, and for error assign the following:

1. The writ of *venire* is defective in this : The sheriff is commanded to summon a jury from a particular part of the county. The sheriff summoned the jury without its having been drawn as directed by statute.

2. The indictment is defective in both counts.   The assault is not alleged in the first count with sufficient certainty.  The time the person killed died, is not alleged with sufficient certainty in the second count.

3. The verdict is general; it ought to have specified upon which count the prisoner was found guilty.

The indictment alleged that the defendant, "on the 24th day of September, 1832, with force and arms, at Woodville, in said county of Wilkinson, in and upon said deceased, did feloniously," etc., "of his malice," etc., etc., "did make an assault," with the usual description of weapon, wound, etc.   The indictment also alleged that Turbeville, from the 24th to the 25th of September, 1832, at Woodville, in said Wilkinson county, "did languish," etc., "and then" (repeating the time and place) "of said mortal wounds did die."

There was also a motion for a new trial, upon the ground that, previous to the investigation, one of the jurors had expressed an opinion from rumor.   Both of the foregoing motions were overruled, bills of exception tendered to the opinion of the court, and an appeal was also prayed by the defendant, which was refused by the court below.   And this action of the court is assigned as error.

*Gildart* for plaintiff in error, contended, that the indictment was defective.   When or where the assault was made, is not alleged with sufficient certainty.

The assault is material ; time and place must be added to every material circumstance.   7 Dana, 268.

When the person slain died, is material.   4 Comyn, 393.

2. The verdict is general.   The reason why this is error, is that the court may know how to give judgment, and that the party, if indicted a second time for the same offense, may he plead an acquittal or conviction in bar.

3. The caption forms a part of the indictment, and a copy

must be furnished the prisoner.   U. S. *v.* Insurgents, 2 Dall., 342.

4. It does not appear in the caption when and where the grand jurors were sworn.   6 Wentworth Pl., 2 ; Guernsey v. People, 3 Johns. Cases, 265.

5. The prisoner was entitled to appeal.

6. The jurors who were called to try the prisoner were selected by the sheriff without being drawn.   See statute prescribing the mode of summoning jurors ; 3 Bacon, 729 ; Hale's Hist. Com. Law, 286, ch. 12.

7. When the *venire* was exhausted, the court erred in directing the sheriff what particular jurors to present to the prisoner ; and a bare order of the court was not sufficient to summon talesmen.

If the sheriff have any right to summon tales-jurors, it must be from by-standers.   He must exercise his own discretion, and that discretion cannot be controlled by the judge.

A tales can only be summoned by writ, and then only after return of *distringas.*    3 Bacon, 774 ; 2 Hawkins, 576.

8. The court erred in directing the sheriff to summon a jury from a particular part of the county ; although this was the old common law form, it was found to be an evil, and abolished. Hale's Com. Law Notes to 12th chap., note B. ; Wentworth Pl., 2.   The jurors were to come from the hundred.   Ib.

The prisoner could, by common law, challenge for want of hundredors.   3 Thomas' Coke, 606, note 3.   A hundred is a political division of a government.   There is no such division known to our law.   Such parts of the common law only were adopted as were necessary, useful and adapted to our institutions.   It is not the practice.   The constitution, Rev. Code, 541, repeals it.   None of these errors are cured by statute of jeofailes or amendments.   3 Bacon, 773 ; 2 Hawkins, 429, ch. 27, §§ 108–9–10.

Sharkey, C. J.:

There are several points made in the argument of this case, principally in relation to the legality of the jury and the jury process.

First. It is contended that the petit jury were neither drawn according to the statute nor the common law. The *venire* was issued in term time, for thirty-six jurors, returnable in six days, and tested of the same time. By the statute, the panel of jurors is to be drawn in term time, or in vacation, and a *venire* is directed to issue, returnable to the next term. The grand jury is to be drawn from the number appearing, and the balance are to be sworn as petit jurors for the term, according to the form of the oath prescribed. To my mind, it is obvious that these jurors were not intended exclusively to form the panel for the trial of criminal causes. There is a different section of the statute from which the circuit courts derive criminal jurisdiction, and the powers necessary to enforce it. By the sixteenth section of the circuit law, it is declared, that they shall " have and exercise all the powers incident, or belonging to a court of oyer and terminer and general jail delivery."

The terms used in the statute are sufficiently broad, in the absence of express legislative provision, to vest in the circuit courts, not only the subject-matter of jurisdiction pertaining to courts of oyer and terminer, and general jail delivery, but also to confer on them all the incidents or necessary means of enforcing their jurisdiction.

The judges at the assize in England sit by virtue of five different commissions or authorities, two of which are mentioned in our statute, as conferred upon the circuit courts, to wit, oyer and terminer, and general jail delivery. By the first, they are to inquire, hear and determine, of all felonies and misdemeanors found by indictment at the same term, and cannot try indictments previously formed. By the second, they can try every prisoner that is in custody when the term commences. In order to exercise jurisdiction under the first-named commission, it is proper, and, indeed, especially necessary, that they should have power to summon and empanel a jury at the same time, otherwise their powers could not be enforced. It is even said that they cannot issue jury process until issue joined ; but it is clear that they may issue a *venire* and make it returnable the same day, or any day during the term, according to common law ; and the same power may be exercised as a court of jail delivery.

1 Chitty Cr. Law, 508, 513 ;  4 Hawkins, P. C., 376, 377 ; Cro. Car. 315 ; 3 Bacon Abr., 736.   There is, thus far, no irregularity in the *venire* in this particular, and this may answer also the objection made to the test of the *venire*.

It is next urged that the *venire*, at common law, could only issue for twelve jurors ; but this position is not sustained by the authorities.   They are clear that a greater number might. and, indeed, should be summoned.   3 Thomas' Coke, 459 ; 1 Chitty Cr. Law, 505 ; 2 Dallas, 341.

There is an objection taken to the caption of the indictment, because it is not shown that the grand jury, were " then and there" sworn.   Lord Hale, in the form which he has given, 1 Chitty Cr. Law, 327, has omitted the words " then and there," which he probably would not have done, if he had deemed them material.   Chitty himself is more explicit on this subject, and says in express terms, that these words are unnecessary, and cites many authorities in support of his position.   1 Chitty Cr. Law, 334.   The caption as it is made up in our courts, is the mere ministerial act of the clerk in making out his record and I know of no rule that requires it to be completed before the trial.

Justice Kent, in the case cited from 3 Johnson's cases, admits it to be an objection to form, merely resting on positive authority ; and with due deference, I think the weight of authority is against it.   The case cited, was removed to the Supreme court, by *certiorari,* and was then to be tried at the circuit court, such being the course in that state.

It is also said that it does not appear with sufficient certainty, that the grand jury were of Wilkinson county.   As a principle it is evidently true that they should appear to be of the county, and I think the record is within the rule.   The *venire* by which the grand jury were summoned, is set out at length, and shows that the persons drawn, were of the county, and I do not think that that showing can be wholly disregarded, it being a part of the record.   But the indictment itself as fully shows them to be of the county, as did the indictment in Byrd's case, 1 How. R., 163, 247.   That they are called the grand jurors of the State of Mississippi, can be no objection, it being true.   They are em-

phatically, the grand jurors of the state, being authorized to inquire concerning offenses against the state. This is the form given in the books, and pursued in the United States courts, and I think it without objection.

Another objection is, that it does not appear that a list or panel of the jury was served upon the defendant. I do not think the record sustains the objection. The language of the record is this: " Served a true copy of the indictment, *venire facias*, and *venire* on the prisoner." The word " venire," was no doubt intended to mean the panel, but this question is not now open to decision, unless the defect could be made clearly to appear, since it was decided in the case of the State v. Johnson, Walker's R., 396, that by going to trial, the prisoner waived the privilege. The only remaining point which deserves notice, arises out of the language used in the special *venire*, which commanded the sheriff to " summon thirty-six good and lawful men of his county, and who are in nowise of kin to James Shaffer, and residing as near as may be to the place where the murder was committed," etc. It is argued with much plausibility, that the direction to summon the jury " as near as may be," to the place of the offense, was an abridgment of the prisoner's constitutional right to be tried by a jury of the county.

The common law was particularly careful in securing to individuals a trial by the jury of the neighborhood or *visne*, and hence it required, that the jury, or at least a part of them, should be of the hundred in which the cause of action or offense occurred, and if they were not, it was a cause of challenge. The rule proceeded from the reason, that the inhabitants of the neighborhood, were more intimately acquainted with the merits of the cause of controversy, and, therefore, better prepared to decide. This was found in some cases, to be productive of mischief and delay, because, at times, a sufficient number of hundreders could not be obtained, and because jurors permitted their prejudices to have an influence in the formation of their verdict. The courts, therefore, relaxed the rule, and it was ultimately changed in civil cases, by the 4 and 5 Anne, ch. 16, which authorized the taking the jury from the county.

Under this statute it was held to be no cause of challenge that

part of the jury were not from the *visne*, or neighborhood; and certainly, it was never held to be cause of challenge, after the enactment, that the jury, or any part of it, were from the hundred and not from the body of the county generally.

The statute mentioned, did not extend to criminal cases, and afterwards, another was passed, in the reign of George II., which included prosecutions on penal statutes leaving prosecutions for crimes still unaltered. But the practice in criminal prosecutions also changed, and the direction in the *venire* was looked upon as mere form, and the jury were selected from the body of the county, without the least regard to the *visne* of the indictment. 3 Thomas' Coke, 464, note 8. So far as the law was altered by statute, the principal object seems to have been to prevent captious objections after trial, for the want of hundredors, and the statutory provisions commenced by making a verdict cure the defect, and ultimately authorized the taking of the jury from the body of the county. The practice in criminal cases was made to conform to it, and objection to want of hundredors discontinued, until it went out of use, and was ultimately abolished by statute. The rule of the common law evidently had its origin in a spirit of justice and humanity toward the accused party, and the abuse of its just and humane indulgence, was one cause of this change. In regard to juries, therefore, in most cases, the *visne*, or neighborhood, or hundred, is no longer regarded by the laws of England, as it is with us, a county is the smallest subdivision of territory known in the summoning of juries. We are to consider the nature of the privilege secured by our constitution, and for this purpose it may not be amiss to recur to the reasons, independently of those of convenience and justice, which superinduced the security of it in a permanent manner. The taking of our citizens from their homes and friends to be tried by strangers, without the means of a fair investigation, had no doubt due weight in the constitutional arrangement. It was made in the spirit of the common law, to secure to the accused a trial by his neighbors, by constituting the citizens of the county as triers, and excluding such as were of a different county. It is true that there is nothing which confers a right to select from a particular neighborhood, and I

think such a construction should be given, as to prevent the selection of a jury from a particular neighborhood, and I think such a construction should be given, as to prevent the selection of a jury from a particular part of a county, by definite description ; but it may be questioned whether the general terms used in this *venire facias*, are to be understood as confining the sheriff to any certain limit. Certainly, if the common law be founded in reason, the taking of a jury from a neighborhood cannot be an objection, and the common law principle may serve in some degree to illustrate the spirit of the constitutional provision.

The words used do not necessarily and of themselves comprehend any particular district, but they might be used for oppressive purposes. The words *visne* or neighborhood are interpreted to mean the county, and they do not seem to be more explicit than the language of the *venire*. Although the common law principle had its origin in reasons the most favorable to the accused, yet it was found to be attended with bad consequences, as bringing into the jury-box the prejudices and animosities of juries, and Lord Hale gives this as the main reason for the gradual change in the law. It is certainly the object in the law to give to the accused an impartial jury, and any rule which would tend to impair the object should not be sanctioned.

I do not think the term used imposed a restraint on the sheriff, yet he might so use the power to the injury of the party. I strongly incline, on the whole view of this question, to think that the words of the *venire* did not direct, necessarily, the sheriff to the particular neighborhood, but as my brother judge is very positive on the other side of the question, and as I entertain strong doubts, I will yield in favor of him.

The other points in the case I do not think sustainable ; the authorities are, to my mind, clear.

Judgment reversed.